(No. 45512.

VIOLET HALBERSTADT, Appellee, v. HARRIS TRUST & SAVINGS BANK *et al.,* Appellants.

*Opinion filed September 25, 1973.*

122

PRETZEL, STOUFFER, NOLAN & ROONEY, of Chicago (JOSEPH B. LEDERLEITNER, of counsel), for appellants.

REED, LUCAS & DOHERTY, of Chicago (CHARLES J. REED, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiff, Violet Halberstadt, as the widow of Gerald Halberstadt, filed a second amended complaint in the circuit court of Cook County charging defendants Harris Trust & Savings Bank (building owner), N. W. Harris Corporation (building manager), and Robert Van Nest (management employee) with violations of the Structural

Work Act (Ill. Rev. Stat. 1965, ch. 48, par. 60 *et seq.*) which she alleged proximately caused her husband's death when he fell from a commercial office building while washing windows on July 22, 1965. The circuit court granted defendants' motion to dismiss the complaint, ruling that deceased's occupation was not within those afforded protection by this statute. The appellate court reversed and remanded, holding that the complaint was properly filed and that deceased was within the occupational category protected by the statute. (*Halberstadt v. Harris Trust & Savings Bank (1972), 7 Ill. App. 3d 991.*) We granted leave to appeal.

Defendants argue that the second amended complaint (filed April 30, 1971) superseded prior pleadings and, invoking the Structural Work Act in this complaint almost six years after deceased's accident, is for that reason barred by limitations. The facts relevant to this contention are as follows. On July 18, 1966, a two-count complaint was filed against Harris Trust & Savings Bank by Violet Halberstadt in her capacity individually, as administrator of the deceased's estate, and as the mother and next friend of their six minor children. The first count charged defendant with violations of the Structural Work Act in that it failed to provide deceased with a safe scaffold during his work, thereby necessitating deceased's use of flanged hooks affixed to the building as his sole means of support. These hooks were alleged to have been corroded and paint encrusted. The second count, as now characterized by defendants, charged a violation of the Injuries Act (Ill. Rev. Stat. 1965, ch. 70, par. 1 *et seq.*) and sought damages for loss of means of support.

On July 19, 1967, Violet Halberstadt, as administrator of her husband's estate, filed an amended one-count complaint charging the instant defendants with negligence in their failure to provide proper exterior attachments for window washers' safety belts. The cause proceeded until April 1, 1971, when plaintiff's motion to substitute

counsel was granted. Other discovery matters were conducted thereafter. The complaint now at issue was then filed which, in substance, charged defendants with violation of the Structural Work Act in that they failed to provide deceased with the proper scaffold even though they knew of the hazardous condition of the window stays which prevented the proper use of safety harnesses.

Defendants, in support of their contention, argue that each amended pleading not only superseded and abandoned prior pleadings but also asserted new actions. Thus they maintain that the second amended complaint was filed too late. Conversely, plaintiff asserts that her right to amend is predicated on section 46 of the Civil Practice Act. (Ill. Rev. Stat. 1971, ch. 110, par. 46.) Plaintiff submits that the conduct described in all the pleadings is virtually identical and that amendments to the pleadings during the pendency of the litigation were simply designed to sustain the claim which formed the basis of the original complaint.

Section 46 of the Civil Practice Act provides in relevant part: "At any time before final judgment amendments may be allowed on just and reasonable terms *** changing the cause of action or defense or adding new causes of action or defenses *** which may enable the plaintiff to sustain the claim for which it was intended to be' brought ***. The cause of action *** set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that *the cause of action asserted *** in the amended pleading grew out of the same transaction or occurrence set up in the original pleading ****.*" (Emphasis added.) Ill. Rev. Stat. 1971, ch. 110, par. 46 (1), (2).

The aforementioned provisions were designed to

insure fairness to the litigants rather than unduly enhance the technical considerations of common-law pleading. (*Geneva Construction Co. v. Martin Transfer and Storage Co. (1954), 4 Ill.2d 273, 287.*) As was noted in the *Geneva* case, the policy attendant to statutes of limitation is to provide defendant a sufficient opportunity to investigate the factors upon which his liability may be based while such evidence is still ascertainable. (4 Ill.2d at 289-90.) In the present case it is readily apparent that the cause of action set forth in the second amended complaint "grew out of the same transaction or occurrence set up in the original pleading," which was timely filed. Moreover, in all the pleadings the basis of defendants' liability was the alleged defective nature of the work area utilized by deceased prior to his fall. Thus defendants were informed of circumstances upon which they might predicate a defense. We conclude that the second amended complaint was properly filed.

Defendants further contend that the appellate court erred in creating a right of recovery under the Structural Work Act for those engaged in the activity of washing windows which is not performed incidental to the erection, repair, alteration, removal or painting of a structure. The pertinent provisions of this statute read as follows:

> "Sec. 1. \*\*\* all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the *erection, repairing, alteration, removal or painting* of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon.
>
> \* \* \*
>
> Sec. 4. Whenever it shall come to the notice of the

Director of Labor or the local authority in any city, town or village in this State charged with the duty of enforcing the building laws, that the scaffolding or the slings, hangers, blocks, pulleys, stays, braces, ladders, irons or ropes of any swinging or stationary scaffolding, platform or other similar device used in the *construction, alteration, repairing, removing, cleaning or painting* of buildings, bridges or viaducts within this State are unsafe or liable to prove dangerous to the life or limb of any person, the Director of Labor or such local authority or authorities shall immediately cause an inspection to be made of such scaffolding, platform or device, or the slings, hangers, blocks, pulleys, stays, braces, ladders, irons or other parts connected therewith.

\* \* \*

Sec. 9. Any owner, contractor, sub-contractor, foreman or other person having charge of the *erection, construction, repairing, alteration, removal or painting* of any building, bridge, viaduct or other structure within the provisions or this act, shall comply with all the terms thereof \*\*\*.

\* \* \*

For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; and in case of loss of life by reason of such wilful violation or wilful failure as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives." (Emphasis added.) Ill. Rev. Stat. 1965, ch. 48, pars. 60, 63, 69.

In the present case the appellate court noted that the term "cleaning" did not appear in sections 1 and 9 of the statute but did appear in section 4. In order to resolve what the court considered to be an ambiguity, rules of statutory construction were utilized. This enabled the court to conclude that if the term "cleaning or maintaining" was inserted in section 1 an unambiguous and modern regulatory scheme would emerge which would be in

harmony with the statutory objective. It therefore held that the trade of window washing, as performed in this instance, should be afforded protection. 7 Ill. App. 3d at 996-99.

Defendants argue, however, that there is no allegation that the building in question was being erected, repaired, altered, removed or painted as specified in either sections 1 or 9 and that a person not directly involved in these activities is not entitled to this statutory protection. They therefore urge that the appellate court's aforementioned rationale amounts to the judicial usurpation of the legislative function by the creation of a new classification for recovery.

It has been determined that the Structural Work Act protects work activities of a particularly hazardous nature and is designed to lessen the extent of the danger. (*Gannon v. Chicago, Milwaukee, St. Paul and Pacific Ry. Co. (1961), 22 Ill.2d 305, 321-2,* citing *Kennerly v. Shell Oil Co. (1958), 13 Ill.2d 431, 435.*) We have consistently reiterated this interpretation. (*Larson v. Commonwealth Edison Co. (1965), 33 Ill.2d 316, 322; Kobus v. Formfit Co. (1966), 35 Ill.2d 533,537; Louis v. Barenfanger (1968), 39 Ill.2d 445, 447-48, cert. denied, 393 U.S. 935, 21 L. Ed. 2d 271, 89 S. Ct. 296; Crafton v. Knight & Associates, Inc. (1970), 46 Ill.2d 533, 536; St. John v. R. R. Donnelly & Sons Co. (1973), 54 Ill.2d 271, 274*; see generally Beckner, A History of Illinois Labor Legislation (1929), at 245-248.) To effectuate this purpose a liberal construction has been adopted (*Crafton v. Knight & Associates, Inc. (1970), 46 Ill.2d 533, 536*) in order to afford "broad protection to working men." *Juliano v. Oravec (1973), 53 Ill.2d 566, 570.*

The occupation of a commercial window washer is within this employment classification. (*Chicago Cleaning Co. v. Industrial Board (1918), 283 Ill. 177.*) In *Chicago Cleaning* it was recognized, at page 181, that "The business of washing windows, as such, in large cities, is as much a

part of the maintenance of buildings as would be the replacing of glass in windows, the painting and decorating of the buildings, or the re-pointing of the outside where the mortar between the bricks is giving way."

The appellate court herein set forth an example of the window painter and window washer who work together on a scaffold painting and washing the same windows. The court noted that it would be absurd to conclude that the painter is protected by the Structural Work Act while the window washer is not. (7 Ill. App. 3d at 997.) It may be said that under the rationale of *Louis v. Barenfanger (1968), 39 Ill.2d 445,* the painter, who utilizes a window ledge and attaches a safety harness to flanged hooks for support while working, would be statutorily protected.

Defendants do not now dispute the logic of the appellate court's reasoning but rather implicitly seek to limit its incisive observation to situations where the window washer's activity is incidental to the repair, alteration, removal or painting of the structure. Such attempt would merely result in an illogical conclusion, for the inherent risks are identical and, as recognized in the *Chicago Cleaning* case, the function of washing windows is qualitatively comparable to that of repairing or painting a structure. It is a rule of statutory construction that the legislature is presumed not to have intended an absurdity or injustice. *(Illinois Crime Investigating Com. v. Buccieri (1967), 36 Ill.2d 556, 561, cert. denied, 389 U.S. 848, 19 L. Ed. 2d 117, 88 S. Ct. 75.)* For these reasons the appellate court did not create a new classification of those who might be protected by this statute. We therefore hold that the Structural Work Act, which was designed to protect those workmen who are hazardously employed on structures, does include tradesmen who engage in cleaning windows of commercial buildings.

Accordingly the judgment of the appellate court is affirmed.

*Judgment affirmed.*