402

JAMES A. FARLEY, Plaintiff-Appellant, *v.* MARION POWER SHOVEL CO., INC., *et al.,* Defendants-Appellees.

(No. 74-60;

Fifth District—June 24, 1974.

Harris and Lambert, of Marion, for appellant.

James B. Bleyer, of Marion, for appellee Marion Power Shovel, Inc.

Mitchell & Armstrong, of Marion, for appellees Ayrshire Collieries and Amax Coal Co.

Mr. JUSTICE CREBS delivered the opinion of the court:

This is an appeal from the dismissal of a complaint in the Circuit Court of Williamson County charging the defendants with a violation of the Structural Work Act. (Ill. Rev. Stat., ch. 48, sec. 60.) The relevant portion of that statute provides:

> "All scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed * * * placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon * * *."

The plaintiff's complaint alleges that on June 5, 1971, he was an employee of Erection Service, Inc., and was engaged in the erection, construction and assembling of a stripmine shovel which was to be used in the strip mining of coal. The complaint further alleged that the stripmine shovel was owned by the defendants and that the defendants engaged Erection Service, Inc., to assemble the shovel. The plaintiff was allegedly injured when he fell from a drum which was on the stripmine shovel and which was allegedly being used as a scaffold, stay, support or other mechanical contrivance. The complaint states that the defendants wilfully violated the Structural Work Act in that they failed to furnish the plaintiff sufficient ropes or other devices with which to tie himself on to the drum.

The court dismissed the complaint on the ground that the Structural Work Act does not apply to the performance of work upon a movable item of personal property and that a stripmine shovel is such an item.

The sole issue raised by this appeal is whether a stripmine shovel is a "structure" within the meaning of the Structural Work Act. We hold that it is.

The defendants contend that the word "structure" includes only items of real property and not movable personal property. That argument was accepted in *Juenger v. Bucyrus-Erie Company* (E.D. Ill. 1968), 286 F.Supp. 286. The issue in *Juenger* was whether a "world-record size stripping shovel" was a "structure" within the meaning of the Structural Work Act. The United States District Court for the Eastern District of Illinois applied the rule of *ejusdem generis* in reaching the conclusion that the word "structure" refers only to real property. The rule of *ejusdem generis* has been defined as follows:

> "In the construction of laws, wills, and other instruments, the

'ejusdem generis rule' is, that where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." Black's Law Dictionary, 608, (4th ed. rev. 1968).
The judge in *Juenger* reasoned that, since the word "structure" follows the words "house," "building," "bridge" and "viaduct" and because those words describe items permanently fixed to real estate, the word "structure" also refers only to items fixed to real estate.

We disagree with the holding in *Juenger* and refuse to adopt the reasoning applied in that case.

■■ In *Halberstadt v. Harris Trust & Savings Bank*, 55 Ill.2d 121, 127, 302 N.E.2d 64, 67, the supreme court stated:

"It has been determined that the Structural Work Act protects work activities of a particularly hazardous nature and is designed to lessen the extent of the danger * * * We have consistently reiterated this interpretation * * * To effectuate this purpose a liberal construction has been adopted * * * in order to afford broad protection to working men!"

The supreme court has thus mandated a liberal construction of the Structural Work Act and has stated that the primary purpose of the Act is to afford broad protection to men doing work of a hazardous nature. (See also *Crafton v. Knight & Associates, Inc.*, 46 Ill.2d 533, 263 N.E. 2d 817; *Louis v. Barenfanger*, 39 Ill.2d 445, 236 N.E.2d 724; *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 22 Ill.2d 305, 175 N.E. 2d 785.) There is no question that the plaintiff in the instant case was performing work of a hazardous nature. The stripmine shovel from which he allegedly fell is much larger than many buildings, and the complaint alleges that the plaintiff fell a distance of 15 to 20 feet.

It appears that there are no cases in which an Illinois reviewing court has employed the liberal construction rule to extend the definition of "structure" so as to include items of movable personalty. No case other than *Juenger*, on the other hand, has held that the word "structure" as used in the Structural Work Act applies only to items of real property.

It has been held that New York authorities are to be considered in construing the Illinois Structural Act. (*Bohannon v. Ryerson & Son, Inc.*, 72 Ill.App.2d 397, 219 N.E.2d 627.) That decision is based upon the fact that much of the Act was taken from the New York Labor Laws of 1895. (New York Labor Laws 1895, ch. 50, art. 10, sec. 240, McKinney's Consolidated Laws of New York Anno. Book 50, at 207.)

In *Caddy v. Interborough Rapid Transit Co.*, 195 N.Y. 415, 88 N.E.

747, the New York Court of Appeals held that an item of movable personalty was a "structure" within the meaning of a statute almost identical to the Illinois Structural Work Act. In *Caddy*, the plaintiff was injured while engaged in repairing a railroad car. He had been standing on a plank about eight feet above the floor when the plank broke. The plaintiff brought suit against the owner of the railroad car pursuant to a statute which provided:

> "A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building, or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed or operated as to give proper protection to the life and limb of a person so employed or engaged." (New York Labor Laws 1897, ch. 415, sec. 18, at 467.)

The plaintiff's complaint was dismissed in the trial court, but the dismissal was reversed by the Appellate Division, and that decision was appealed to the New York Court of Appeals. One of the issues presented was whether a railroad car was a "structure." The defendant argued that the doctrine of *ejusdem generis* applied to limit the meaning of "structure" to the specific terms "house" and "building." The Court of Appeals held that a railroad car was a "structure" and stated:

> "A scaffold is no more dangerous when used in erecting, repairing, altering or painting a house or building, than when used for the same purpose upon any structure where the same kind of a scaffold is necessary. The dangers to the employee are the same, and the evils of the common-law rule sought to be remedied by the statute are alike in each case." (195 N.Y. at 420, 88 N.E. at 749.)

We find the rationale of *Caddy* persuasive and applicable to the instant case.

■■■ The doctrine of *ejusdem generis* should be applied differently than it was in *Juenger* so that it better effectuates the intent behind the Structural Work Act. The words "house," "building," "bridge" and "viaduct" contain common elements which are more relevant than is their characteristic of being real property. Each of those objects is an object the erection, repairing, alteration, removal or painting of which creates a considerable degree of danger for the workmen involved. The type of danger is the same for each object in that it can be minimized by the safe erection, construction, placing and operation of scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances. We believe that the most important common element contained in the

words "house," "building," "bridge" and "viaduct" is the type of danger which exists when structural work is performed on these objects. We apply the doctrine of *ejusdem generis*, therefore, to define the word "structure" as any object, the erection, repairing, alteration, removal or painting of which creates a considerable degree of danger which can be minimized by the safe erection, construction, placing and operation of scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances. The stripmine shovel which is in issue in the intant case is such a structure.

The defendants argue that defining the word "structure" so as to include items of personal property would lead to absurd results. They contend that applying the Structural Work Act in the instant case would lead to the result that anyone working on a coaster wagon, a tricycle or a power lawn mower would be covered under the Structural Work Act. The argument lacks merit because, even if the word "structure" is defined so as to include the items mentioned by the defendants, the Structural Work Act does not apply unless "scaffolds, * * * or other mechanical contrivances" are utilized when work is performed upon the structure.

■■ We hold that when the erection, repairing, alteration, removal or painting of an object is work of a hazardous nature and is work which requires the use of a scaffold, hoist, crane, stay, ladder, support or other mechanical contrivance, the Structural Work Act requires that the mechanical contrivance be erected and constructed, placed and operated in a safe manner whether the "structure" is real or personal property.

For the foregoing reasons, we reverse the order of the Circuit Court of Williamson County and remand the cause with directions to proceed in accordance with the views herein expressed.

Reversed and remanded with directions.

G. MORAN, P. J., and EBERSPACHER, J., concur.