(No. 46920.—

JAMES A. FARLEY, Appellee, v. MARION POWER SHOVEL CO., INC., *et al.*, Appellants.

*Opinion filed March 24, 1975.—Rehearing denied May 29, 1975.*

GOLDENHERSH, J., dissenting.

James B. Bleyer, of Marion, for appellant Marion Power Shovel Co.

Mitchell & Armstrong, Ltd., of Marion, for other appellants.

Harris and Lambert, of Marion, for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

This case is before us on pleadings presenting a single issue: Is a large, self-propelled power shovel used in strip-mining coal a "structure" as that term is used in the Structural Work Act of this State (Ill. Rev. Stat. 1971, ch. 48, pars. 60 through 69)? We believe, for the reasons herein expressed, that it is not.

Plaintiff, James A. Farley, filed an amended complaint in the circuit court of Williamson County alleging that prior to June 5, 1971, one or more of the defendants, Ayrshire Collieries Corporation (a coal mining company), Amax Coal Co., a division of American Metal Climax, Inc.,

and American Metal Climax, Inc., purchased from defendant Marion Power Shovel Co., Inc., the shovel in question; that because of its size it was necessary that the shovel be shipped to the coal mine location near Willisville, Illinois, and there put together; that plaintiff's employer, Erection Service, Inc., was engaged to assemble the machine at this location; that on June 5 plaintiff, while "sitting on and straddling a drum of said machine, pulling a cable" fell to the deck of the machine suffering the injuries complained of. It is further alleged that the defendants were in charge of the erection of the machine, that plaintiff, when he fell, "was using the drum as a scaffold, stay, support or other mechanical contrivance," that defendants willfully violated the Structural Work Act by failing to provide plaintiff sufficient ropes or other devices to prevent his falling from the drum and that defendants' failure to do so was the direct and proximate cause of his injuries.

Defendants moved to dismiss plaintiff's amended complaint on the ground that the shovel was moveable personal property and, as such, was not included within the structures referred to in the Structural Work Act. That motion was allowed, the complaint was dismissed and judgment entered against plaintiff. The Appellate Court for the Fifth Judicial District reversed, holding the complaint sufficient (20 Ill. App. 3d 402), and we granted leave to appeal.

The relevant portion of the Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, par. 60) includes "all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of *any house, building, bridge, viaduct, or other structure* \*\*\*." (Emphasis added.) While our decisions have indicated "that the Structural Work Act protects work activities of a particularly hazardous nature," and that it should be liberally construed "in order to afford 'broad protection to working

men' " (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill.2d 121, 127), there was, prior to the appellate court's opinion in the case before us, no Illinois decision equating a mobile power shovel with a "structure" as that term is used in the Act.

Plaintiff urges in support of his argument that the purpose of the Structural Work Act is "protecting workmen employed in dangerous and extra hazardous occupations" and that the dangers involved in assembling a power shovel as large as the one dealt with here are similar to those involved in working upon buildings. Neither the dimensions of the completed shovel nor the number or size of the parts in which it was shipped is established in the record, but it seems clear that it is quite large and that the end of its boom will be higher than many multistory buildings.

Plaintiff places considerable reliance upon the opinion of the New York Court of Appeals in *Caddy v. Interborough Rapid Transit Co.* (1909), 195 N.Y. 415, 88 N.E. 747, in which that court held that a railroad car which had been "jacked up" some 6 feet above the floor, and on which the plaintiff was working while standing upon a scaffolding arrangement, was a "structure" within the meaning of the "labor law" of New York, a statute similar to our Structural Work Act. The *Caddy* court, in reaching its conclusion, cited several earlier opinions of the Appellate Division, including *Madden v. Hughes* (1905), 104 App. Div. 101, 83 N.Y.S. 324, where a scow, some 100 feet in length, was held, without discussion, to be a "structure" within the contemplation of the New York statute, and *Chaffee v. Union Dry Dock Co.* (1902), 68 App. Div. 578, 73 N.Y.S. 908, where a ship some 400 feet long under construction with scaffolding around it was also held to be a "structure." It is of some significance, however, to note the difference in the two statutes: Ours states "house, building, bridge, viaduct or other structure" while the New York statute read "house, building or

structure." That this difference was thought to be of some consequence is manifest in the statement by the Court of Appeals that "It is to be observed, moreover, that the word 'structure' is not joined to 'building' and 'house' by the adjective 'other,' but by a simple 'or,' so that the language is 'house, building or structure.' The word 'or' here takes the place of a comma, and this grammatical construction indicates that the word 'structure' has as distinct and separate a meaning as 'building' has from 'house.' " 195 N.Y. 415, 421, 88 N.E. 747, 749.

This disparity was sufficient to persuade the New York courts to reject the normal application of the rule of *ejusdem generis* which the United States District Court for the Eastern District of Illinois in *Juenger v. Bucyrus-Erie Co.* (E.D. Ill. 1968), 286 F. Supp. 286, found dispositive of the precise question before us. There, an allegedly "world-record size stripping shovel," having a height equivalent to a 20-story building and wider than an 8-lane highway, was held not to be a "structure" within the meaning of our act because it was a moveable item of personal property constructed for the purpose of moving it about on the ground. "The doctrine of *ejusdem generis* is that where a statute or document specifically enumerates several classes of persons or things and immediately following, and classed with such enumeration, the clause embraces 'other' persons or things, the word 'other' will generally be read as 'other such like,' so that the persons or things therein comprised may be read as *ejusdem generis* 'with,' and not of a quality superior to or different from, those specifically enumerated." (*People v. Capuzi* (1960), 20 Ill.2d 486, 493-4). It must, of course, yield when a contrary legislative intent is apparent (*Citizens Utilities Co. of Illinois v. Commerce Com.* (1971), 50 Ill.2d 35), but it is the absence of such contrary intent here which compels the conclusion we reach. The difficulty with plaintiff's argument is that it does not recognize what seems to us the plain purpose to limit the application of our statute to

structures of the general type specified therein. Our earlier opinion in *McNellis v. Combustion Engineering, Inc.,* (1974), 58 Ill.2d 146, is not to be construed as indicating otherwise, for the result in that case was predicated, in large measure, upon the governing contractual provisions.

A further difficulty, in our opinion, with plaintiff's rationale is that while the size of this shovel lends surface appeal to holding it to be a "structure" as defined by the Act, there is no point at which inclusion of other vehicles or items of personal property may logically be denied if the work being done on those objects requires some form of support or scaffold. But to so hold permits of no stopping, short of the anomalous result that mechanics who find it necessary to stand upon a stool, ladder or other elevation in order to paint or repair the top of an ordinary car would be deemed to be included within a statute limited by its terms to persons working upon "any house, building, bridge, viaduct or other structure."

We believe the mobile, self-propelled power shovel in this case is not a "structure" as that term is defined in our Structural Work Act. Whether the hazards involved in working upon it or similar objects are such that the Act's protection should be extended to them is for the legislature to determine.

The judgment of the Fifth District Appellate Court is reversed, and the judgment of the circuit court of Williamson County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. I agree with the well-reasoned opinion of the appellate court and would hold that the power shovel is a structure within the contemplation of the Structural Work Act. I find it difficult to reconcile this opinion with *Warren v. Meeker,* 55 Ill.2d 108, in which we held that a grain bin, sold under a lease agreement as

personalty, and admittedly easily removable, was a "structure." The majority purports to rely upon the New York case of *Caddy v. Interborough Rapid Transit Co.* (1909), 195 N.Y. 415, 88 N.E. 747, which upon careful reading is not authority for the position which the majority takes. The majority adopts the interpretation placed upon the statute in *Juenger v. Bucyrus-Erie Co.* (E.D. Ill. 1968), 286 F. Supp. 286. In reaching his conclusion the United States District Court judge who decided *Juenger* relied on *Bullman v. City of Chicago*, 367 Ill. 217. That case involved a statute which authorized cities to license and regulate second-hand stores, and, as pointed out in *Bullman*, statutes granting powers to municipal corporations are to be strictly construed. We have repeatedly held that the purpose and intent of the Structural Work Act is to protect workmen from the hazards of dangerous work and that to effect this purpose the Structural Work Act is to be liberally construed. *Halberstadt v. Harris Trust & Savings Bank*, 55 Ill.2d 121.

Nor am I particularly impressed with the dire prediction of the anomalous consequences that might flow from our holding this brobdingnagian monster to be a structure. This argument is utterly demolished by the very logical statement in the appellate court opinion that the Structural Work Act does not apply unless "'scaffolds *** or other mechanical contrivances' are utilized when work is performed upon the structure." 20 Ill. App. 3d 402, 406.