DON M. LATRONICA, Plaintiff-Appellant, v. COMMONWEALTH EDISON COMPANY *et al.*, Defendants-Appellees.

First District (1st Division)   No. 87—3043

Opinion filed May 31, 1988.—Rehearing denied June 23, 1988.

Terrence J. Mahoney, of Walsh, Neville, Pappas & Mahoney, of Chicago, for appellant.

204

Eileen M. O'Sullivan, of Smith & Tamillow, of Chicago, for appellee Commonwealth Edison Company.

Marie G. Enriquez, Sandra Young, and Paul V. Kaulas, all of Purcell & Wardrope, Chartered, of Chicago, for appellee Edward Gray Corporation.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from an order dismissing a complaint under the Structural Work Act (Act) (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*) and denying leave to file an amended complaint. We affirm.

Plaintiff, Don M. Latronica, was employed by Caisson Corporation to operate a drill rig on property owned by Commonwealth Edison Company. Commonwealth Edison employed Edward Gray Corporation as a general contractor to undertake construction activity at the site involving the erection of tanks and buildings. Edward Gray Corporation employed the plaintiff's employer, Caisson Corporation.

On December 5, 1977, plaintiff, after operating the drill and while attempting to climb down from the drill rig, fell off the rig and was injured. He claimed that the fall was caused by the excessive amount of oil and fluid which had accumulated on the truck platform.

■ Defendants filed motions to dismiss the Structural Work Act count of plaintiff's second amended complaint on grounds that a drill rig is not a "support" within the meaning of the Act. The trial court dismissed the Structural Work Act count and denied plaintiff leave to file an amended Structural Work Act count. This appeal followed.

In pertinent part, section 1 of the Structural Work Act provides:

"That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1981, ch. 48, par. 60.

■ Both parties agree that the only issue to be decided is whether the drill rig from which plaintiff fell can be considered a support within the meaning of the Structural Work Act. Whether the drill rig constitutes a support under the Act is a matter of statutory

construction that becomes a question of law to be decided by the court. (*Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421, 512 N.E.2d 1223; *Carnevale v. Inland Ryerson Building Systems* (1988), 169 Ill. App. 3d 740.) Although the Act is liberally construed in Illinois in order to help achieve its goal of protecting those persons engaged in extrahazardous construction tasks (*McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151, 319 N.E.2d 573), it has never been interpreted to cover any and all activities occurring on construction sites, nor have all "supports" been found to be within the contemplation of the Act. (See, *e.g.*, *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 422, 512 N.E.2d 1223; *Herman v. Swisher* (1983), 115 Ill. App. 3d 179, 181, 450 N.E.2d 28.) Whether a particular device is a support under the Act is determined by the intended use of the device at the time of the injury. *Vuletich*, 117 Ill. 2d at 422; *Choi v. Commonwealth Edison Co.* (1984), 129 Ill. App. 3d 878, 881, 473 N.E.2d 385.

The question here is whether the platform of the drill rig was being used as a support or merely as a pathway at the time plaintiff's injury occurred. Plaintiff contends that the truck-mounted drill rig was being used at the construction site for the purpose of supporting the drill rig mechanism and the plaintiff-operator. He further maintains that the injury occurred due to mechanical and operational defects which caused oil leakage on the support platform and that he was actively engaged in operating the rig for construction purposes at the time of the accident. Defendants contend that the plaintiff was using the truck platform solely as a means of climbing off of the drill rig at the time of the injury and thus the Act is inapplicable.

■ We have determined that in the circumstances here, the truck platform did not constitute a support under the Act. The platform was a permanent part of the drill rig and was not being used as a support from which to perform construction work at the time of the injury. Rather, it was a surface that supported the rig itself and which was being used by plaintiff to climb onto and off of the rig. Moreover, surfaces which are not erected or constructed for use in construction or repair generally do not constitute supports under the Act. See, *e.g.*, *Hall v. Canady* (1986), 149 Ill. App. 3d 544, 500 N.E.2d 689; *Page v. Corley Cos.* (1985), 131 Ill. App. 3d 56, 61, 475 N.E.2d 57.

In reaching the conclusion that the drill rig platform here was not a support within the meaning of the Act, we rely primarily on *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 512 N.E.2d 1223, in which the Illinois Supreme Court found that a stairway that the plaintiff used to return his working materials was not a support

within the meaning of the Act. The plaintiff in *Vuletich* had been employed to clean and repair a furnace. After cleaning the furnace area, he walked to a tool storage area to return a shovel and broom. As he left the trailer and started to walk down the stairs, he slipped on accumulated snow and ice and fell to the ground. The court looked at the intended use of the stairs in question at the time of the injury and concluded that the stairway was not a support within the meaning of the Act. The court noted that the stairs were simply a pathway providing ingress and egress to and from the storage trailer and cautioned that the presence of stairs cannot transform a nonhazardous activity into a hazardous one for purposes of the Act. (*Vuletich*, 117 Ill. 2d at 424.) Like the plaintiff in *Vuletich*, Latronica was using the truck platform solely for the purpose of gaining access to the control panel of the drill rig or leaving the rig. The platform was not being used to support plaintiff as he performed his work; thus, it does not constitute a support within the meaning of the Act.

Plaintiff urges that this court follow *Acquaviva v. Sears Roebuck & Co.* (1979), 68 Ill. App. 3d 588, 386 N.E.2d 381, in which the appellate court reversed the dismissal of a Structural Work Act claim and ruled that moveable construction equipment could be considered a support or mechanical device within the statute. The plaintiff in *Acquaviva* was operating a mortar mixing machine at a construction site. In order to operate the lever to discharge the mortar, he had to stand partly on the machine itself and partly on a wheelbarrow. The court found that as he was dependent upon both the wheelbarrow and the machine in order to reach the control lever on the machine, his injury while using the machine as a support was actionable under the Structural Work Act. *Acquaviva*, 68 Ill. App. 3d at 591.

While we do not disagree with the general proposition that under certain circumstances moveable construction equipment may constitute a support under the Act, *Acquaviva* is distinguishable. The plaintiff in *Acquaviva* was injured while relying on a piece of machinery as a necessary support in pursuance of his required work at a construction site. The court in *Acquaviva* specifically noted that although moveable construction equipment may be considered to be a support under the Act where the injury occurs as a result of the use of the machine, a machine is not a support under the Act when it is used for ancillary purposes. *Acquaviva*, 68 Ill. App. 3d at 592, citing *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 263 N.E.2d 817.

For the same reason, plaintiff's reliance on *Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125, 441 N.E.2d 889, is

misplaced. The plaintiff in *Prange* was injured when a load of wooden poles, which he was transporting on the forklift portion of a tractor, struck him when they rolled off of the tractor-forklift at a construction site. The appellate court held that the Structural Work Act applied in that the forklift was being used as a support for construction materials at the time the materials struck and injured the plaintiff. In *Prange*, as in *Acquaviva*, unlike the instant case, the injury to the plaintiff occurred while the plaintiff was relying on a support device while directly engaged in construction activity.

■ We also address plaintiff's contention that the injury incurred here resulted from a danger the legislature intended to alleviate when it adopted the Act. Plaintiff maintains that he was engaged in the kind of extrahazardous activity contemplated by the Act in that he was injured while attempting to step down from the drill rig immediately after operating the rig for the drilling of foundation caissons.

The Act was intended to compensate only for injuries that result from extrahazardous activity. The background of the Act demonstrates that it was intended to afford injured workers in the construction industry a remedy where none exists rather than to provide an additional remedy where other reasonable and satisfactory remedies (*i.e.*, workmen's compensation and tort remedies) remain to give relief to an injured worker. *Rayfield v. Homart Development Co.* (1981), 100 Ill. App. 3d 620, 622-23, 427 N.E.2d 193; *Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024, 1028, 414 N.E.2d 147.

Even assuming that the platform of the rig had oil and other fluids on its surface, we are not persuaded that a slip and fall resulting from stepping down from such a surface was a danger the legislature contemplated in adopting the Structural Work Act. Plaintiff's use of the platform at the time of his injury did not constitute hazardous activity. Rather, it was one of the myriad of routine and nondangerous activities which occur on every construction site but which are not intended to be protected by the Act. See, *e.g.*, *Bullistron v. Northern Builders, Inc.* (1984), 127 Ill. App. 3d 242, 247, 468 N.E.2d 1281; *Cooley v. Central Illinois Public Service Co.* (1982), 110 Ill. App. 3d 685, 691, 442 N.E.2d 1330.

In summary, our courts have held that where a plaintiff was injured while using a surface as a pathway for ingress and egress rather than as a working area, the Structural Work Act does not apply. (See, *e.g.*, *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 512 N.E.2d 1223; *Carnevale v. Inland Ryerson Building Systems* (1988), 169 Ill. App. 3d 740; *Harper v. Schal Associates, Inc.* (1987), 159 Ill. App. 3d 542, 510 N.E.2d 1061.) Thus the drill rig platform,

which was being used solely as a means of ingress and egress at the time of plaintiff's injury, did not constitute a support here within the meaning of the Structural Work Act and plaintiff's count under the Act was properly dismissed and the trial court properly denied leave to file an amended complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County, dismissing count I of plaintiff's second amended complaint under the Structural Work Act, is affirmed.

Judgment affirmed.

CAMPBELL, P.J., and QUINLAN, J., concur.