JOSEPH R. BOLSMO, Plaintiff-Appellant, v. MARK V ROOFING COMPANY, a/k/a Mark V Roofing and Construction Company, *et al.*, Defendants-Appellees (Mark V Roofing Company, Third-Party Plaintiff; Western Electric Company, Third-Party Defendant).

First District (4th Division)   No. 1—88—1720

Opinion filed October 19, 1989.

Carr & O'Rourke Associates, of Chicago (Donald A. Carr and James J. Zabel, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Paul B. O'Flaherty, Michael A. Pollard, and John M. Murphy, of counsel), for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Joseph R. Bolsmo, brought a two-count complaint against the defendant, Mark V Roofing, alleging a violation of the Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*) and negligence. In his complaint, Bolsmo alleges that he sustained personal injuries when, during the course of his employment as an electrician, he slipped and fell on a roof which Mark V was under contract to repair. The trial court granted summary judgment on both counts in favor of Mark V, and Bolsmo appeals from that order.

On February 2, 1981, the plaintiff, Joseph R. Bolsmo, was employed as a maintenance electrician for Western Electric Company at its Hawthorne Works Facility. Among the buildings that Western Electric owned and operated at the facility is a single-story, flat-roofed building referred to as the Thin Film Building. In August of

1980, Western Electric contracted with the defendant, Mark V Roofing, to replace and repair the roof of the Thin Film Building. Mark V began construction on the roof in September of 1980. In mid-December, before the project was completed, the repair work was suspended due to winter weather. Although the parties disagree as to whether Mark V was active on the project at the time of Bolsmo's injury, it is undisputed that on that date, February 2, 1981, there was approximately one-half inch of snow on that portion of the roof where Bolsmo fell.

In the early morning hours of February 2, 1981, Bolsmo, pursuant to instructions from Western Electric, ascended through a hatchway located on the roof of the Thin Film Building intent on inspecting an exhaust fan which was located on another section of the roof. As Bolsmo stepped from the hatchway, his foot slipped, and he fell to the surface of the roof. Mark V had tarred the surface of the area on which Bolsmo fell, but had not yet laid pea gravel as required under the terms of the contract. Bolsmo, alleging that the absence of pea gravel was the cause of his fall, brought a two-count complaint charging Mark V with liability under the Structural Work Act and common law negligence.

■■ To sustain his Structural Work Act claim, Bolsmo argues that at the time of his injury he was using the roof as a temporary scaffold to elevate himself to a position from which he could perform his work. In making this argument, Bolsmo relies on the case of *St. John v. R.R. Donnelley & Sons Co.* (1973), 54 Ill. 2d 271, 296 N.E.2d 740, for the proposition that a permanent structure, such as a roof or floor, can function temporarily as a support within the meaning of the Structural Work Act. In response, Mark V, citing the Illinois Supreme Court case of *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 512 N.E.2d 1223, asserts that the mere fact that the roof elevated Bolsmo does not mean that he was using the roof as a working platform to perform the kind of extrahazardous activity contemplated under the Structural Work Act. While we acknowledge that a roof or other permanent structure can sometimes function as a scaffold or support (*Crothers v. La Salle Institute* (1977), 68 Ill. 2d 399, 370 N.E.2d 213), in this instance we agree with Mark V that Bolsmo does not fall within the protection of the Structural Work Act.

In the *Vuletich* case, the plaintiff fell off a set of temporary steps leading to a tool storage trailer. The plaintiff argued that because the stairway elevated him to a position where he could secure his tools, the stairs functioned as a support within the meaning of the Structural Work Act. The supreme court, in rejecting this argument, found

that stairs by their nature function to elevate those who use them. If this feature were conclusive on the issue, the court reasoned, every device which serves to elevate would be considered a support under the Act. The court refused to adopt such an expansive interpretation of the Act, focusing instead on the plaintiff's intended use of the stairway. The court concluded that the plaintiff intended to use the stairs as a pathway to the storage trailer, and not as a working platform. The court found that the plaintiff's activity fell outside the intended purpose of the Act which is to protect workmen engaged in activity of a particularly hazardous nature.

In the present case, Bolsmo intended to use the roof to gain access to the exhaust fan. We believe that Bolsmo's intended use of the roof is analogous to that of the plaintiff in *Vuletich*. The fact that the roof incidentally functioned to elevate him does not mean Bolsmo was using the roof as a working platform to perform the kind of extrahazardous activity covered by the Structural Work Act. Accordingly, we uphold the finding of the lower court on this issue.

As the basis of his negligence argument, Bolsmo argues that in addition to the contractual duty Mark V owed to Western Electric, Mark V owed a duty to Bolsmo to exercise ordinary care in completing the roofing and repair work. Without reference to authority, Bolsmo asserts that it is "axiomatic" that a duty arises to those third parties foreseeably expected to employ the roof in the performance of their work. We do not agree that in simply referring to foreseeability the plaintiff has established that Mark V owed a duty to Bolsmo. Even if we were persuaded that Bolsmo's presence on the roof was foreseeable, foreseeability is only one of many factors that the courts use to determine whether a duty exists. (*Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 475 N.E.2d 822.) Bolsmo has not provided any basis for finding that Mark V had any duty other than that defined by its contract with Western Electric. The Illinois Supreme Court has held that where a plaintiff seeks to impose a tort duty on a defendant based on a contractual obligation, the scope of that duty is dependent on the terms of the contract. *Perkaus v. Chicago Catholic High School Athletic League* (1986), 140 Ill. App. 3d 127, 488 N.E.2d 623.

Bolsmo does not contradict Mark V's assertion that under the terms of its contract with Western Electric, Mark V's only obligation was to repair and replace the roof of the Thin Film Building. As part of the repair process, the roof's tarred surface was to be embedded with pea gravel. Mark V's uncontradicted argument is that, as a component of the roof's surface material, the primary function of pea

gravel is to help maintain the structural integrity of the roof's surface, not to provide traction for persons walking on the roof. Mark V's contract with Western Electric did not require Mark V to make the roof a safe walkway. As a consequence, there is no basis for finding that Mark V owed a duty to Bolsmo. An action in negligence is unfounded. The judgment of the circuit court is affirmed on both counts.

Affirmed.

JOHNSON and McMORROW, JJ., concur.